UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD BORDEAU and TRAVIS DOXEE and on
behalf of all other persons similarly situated,

                            Plaintiffs,                  1:17-cv-00188 (BKS/CFH)

v.

V & J EMPLOYMENT SERVICES, INC.,

                            Defendant.
_____

**Appearances:**

Douglas B. Lipsky
Bronson Lipsky LLP
630 Third Avenue, Fifth Floor
New York, NY 10017
*For Plaintiffs*

Sharon M. Porcellio
Bond, Schoeneck & King, PLLC
Avant Building, Suite 900
100 Delaware Avenue
Buffalo, NY 14202
*For Defendant*

Katherine S. McClung
Bond, Schoeneck & King, PLLC
350 Linden Oaks, Suite 310
Rochester, NY 14625
*For Defendant*

**Hon. Brenda K. Sannes, United States District Judge:**

MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

      Plaintiffs Richard Bordeau and Travis Doxee, former employees of Defendant V & J

Employment Services, Inc., a franchisee of Pizza Hut of America, LLC ("Pizza Hut of Am."),

bring this putative collective action, individually and on behalf of all others similarly situated,

against Defendant for allegedly retaining gratuities and failing to pay the minimum wage, in violation of the New York Labor Law ("NYLL"), N.Y. Lab. Law § 196-d, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). (Dkt. No. 1). Before the Court is Defendant's motion to dismiss on the grounds that: (1) Plaintiffs' NYLL claim conflicts with and is preempted by the FLSA and the Internal Revenue Code ("IRC"); (2) Plaintiffs fail to state a plausible gratuity retention claim under the NYLL; and (3) Plaintiffs fail to state a plausible minimum wage claim under the FLSA or NYLL. (Dkt. No. 26). Plaintiffs oppose this motion. (Dkt. No. 32). For the reasons discussed below, Defendant's motion is denied.

## II. BACKGROUND[1]

Plaintiff Bordeau worked as a pizza delivery driver from September 2011 to September 2013 at the Pizza Hut located in Schenectady, New York. (Dkt. No. 1, ¶ 36). Plaintiff Doxee worked as a pizza delivery driver from March 2011 to November 2015, primarily at the Schenectady Pizza Hut, but also "worked a few weeks" at the Pizza Hut in Delmar, New York. (*Id.* ¶ 37). Defendant V & J Employment is a Pizza Hut franchisee. (*Id.* ¶ 21). V & J Employment and Pizza Hut jointly employed the Plaintiffs until approximately mid-summer 2013, when V & J Employment stopped operating the Schenectady and Delmar locations and sold its interest to Pizza Hut. (*Id.* at ¶¶ 38–39).[2]

Plaintiffs used their own cars "to deliver pizzas, bread sticks and other items to Pizza Hut customers." (Dkt. No. 1, ¶ 41). As drivers, they had "face-to-face customer interaction . . . when they make deliveries," and they were "the type of employees who customarily and regularly receive tips from customers." (*Id.* ¶¶ 58–59). Pizza Hut customers can order pizzas and other

---

[1] The facts are taken from the Complaint and assumed to be true for the purposes of this decision. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[2] Pizza Hut was dismissed from this action on August 16, 2017, following its settlement with Plaintiffs. (Dkt. No. 31).

items to be delivered to their home through the Pizza Hit website or the Pizza Hut mobile application, or by calling the nearest Pizza Hut location. (*Id*. ¶ 18). The website and mobile application allow customers to place delivery orders at any Pizza Hut location that makes deliveries. (*Id*. ¶ 19). "Pizza Hut customers are charged a mandatory $2.50 'delivery fee,' which is within the range of what an objectively reasonable customer pays as a tip to a pizza delivery driver and a reasonable customer would expect the delivery fee to be paid to the driver as a gratuity." (*Id*. ¶ 44). Customers were charged the delivery fee "regardless if they order" via the website or mobile application. (*Id*. ¶ 49). "Neither the Pizza Hut website nor mobile application explain to the customer the purpose of the delivery fee (e.g., a fuel surcharge, tolls, overhead, etc.), or that [Defendant] is retaining some or all-of-the [sic] fee."[3] (*Id*. ¶ 46). When customers order via the website or mobile application, both show the amount due, including the delivery fee, but do not allow customers to add a gratuity. (*Id*. ¶ 52).

"On numerous occasions, customers have told Plaintiffs . . . they thought the delivery fee is a gratuity." (Dkt. No. 1, ¶ 55). Plaintiff "infrequently received gratuities directly from customers." (*Id*. ¶ 56). According to Plaintiffs, this is because the customers "reasonably believed the delivery fee was their gratuity." (*Id*. ¶ 57).

Defendants paid Plaintiffs "the statutory minimum wage." (Dkt. No. 1, ¶ 62). Defendants required Plaintiffs, as delivery drivers, "to bear the out-of-pocket expenses associated with their vehicles: gasoline, vehicle depreciation, insurance, maintenance and repairs." (*Id*. ¶ 64). Defendants only paid Plaintiffs $1.35 of the $2.50 fee, per delivery, to reimburse driving expenses. (*Id*. ¶¶ 50, 73). On average, Plaintiffs spent $20 per day on gasoline. (*Id*. ¶ 69). Plaintiffs "made an average of 18 deliveries per 8-hour shift, which required them to drive an

---

[3] In or about 2013, Pizza Hut's website first began stating "the total amount being charged to a customer does not include tip." (Dkt. No. 1, ¶ 47). The mobile application did not inform customers that the total amount charged "does not include tip" until in or about August 2015. (*Id*. ¶ 48).

3

average of 6 miles per round trip, totaling 108 miles per shift and 13.5 mile per hour (108 miles/8 hours)." (*Id.* ¶ 71). Utilizing the IRS's standard mileage reimbursement rates for business and employees,[4] Plaintiffs calculate that they incurred out-of-pocket expenses of at least $7.63 ($0.565 x 13.5 miles) per hour in 2013. (*Id.* ¶ 72). Beginning in June 2015, Plaintiff Doxee began receiving $0.38 per mile "to purportedly reimburse . . . vehicle-related expense." (*Id.* ¶ 76). Plaintiffs assert that "[t]his amount is below the IRS's published reimbursement rate and is not a reasonable approximation of their automobile-related expenses." (*Id.*).

In their first cause of action, Plaintiffs allege that they are eligible to receive tips under NYLL, that the $2.50 delivery fee is a gratuity and belongs to them, and that Defendants deprived them of this gratuity in violation of NYLL § 196-d. (Dkt. No. 1, ¶¶ 88–96). In their second cause of action, Plaintiffs allege that Defendants failed to reimburse them "the reasonably approximate amount of their automobile expenses" and required "*de facto* deductions for vehicle expenses," "thereby reducing their wages below the statutory minimum wage," in violation of NYLL §§ 193 and 198-B(2). (*Id.* ¶¶ 97–104). In their third cause of action, Plaintiffs claim that Defendants failed to pay Plaintiffs the statutory minimum wage, in violation of 29 U.S.C. § 206(a)(1). (*Id.* ¶¶ 105–111).

## III. STANDARD

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in

---

[4] From January through June 2011, the rate was $0.51/mile; from July 2011 through December 2012, the rate was $0.555/mile; in 2013, the rate was $0.565/mile; in 2014, the rate was $0.56 per mile; in 2015, the rate was $0.575/mile; and in 2016, the rate was $0.54/mile. (Dkt. No. 1, ¶ 65).

the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.  DISCUSSION

### A.  Preemption – NYLL § 196-d

In their first cause of action, Plaintiffs allege that by failing to pay them the entire amount of the $2.50 delivery fee, Defendant unlawfully retained gratuities in violation of NYLL § 196-d, which provides: "No employer . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." Defendant argues that, because paying the $2.50 delivery fee as a gratuity would violate both the FLSA and the IRC, Plaintiffs' NYLL claim is preempted. (Dkt. No. 26-1, at 8).

"The Constitution's Supremacy Clause provides that 'the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015) (quoting U.S. Const. art. VI, cl. 2). "Under the Supremacy Clause of the United States Constitution, 'state laws that conflict with federal law are without effect,' and are preempted." *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009) (citation omitted) (quoting *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008)). "Congress may preempt (or invalidate) a state law by means of a federal statute." *Galper*, 802 F.3d at 443. "In general, three types of preemption exist: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively

5

that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." *Figueroa v. Foster*, 864 F.3d 222, 227–28 (2d Cir. 2017) (quoting *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010)). The Second Circuit has explained that field and conflict preemption "are forms of implied preemption" and "recognized that" although these two categories "are not 'rigidly distinct'. . . they remain independent bases for preemption." *Id*. (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 95 (2d Cir. 2012)). When a court is "considering a preemption argument in the context of a motion to dismiss," it must view "the factual allegations relevant to preemption . . . in the light most favorable to the plaintiff." *Galper*, 802 F.3d at 444. "A district court may find a claim preempted only if the facts alleged in the complaint do not plausibly give rise to a claim that is not preempted." *Id*.

### 1.  FLSA

"Under all . . . three preemption tests—express, field, and conflict—[the court's] task is to determine whether, and to what extent, Congress intended to preempt state law." *Niagara Mohawk Power Corp.*, 673 F.3d at 95. "[T]he FLSA's 'savings clause' makes clear that states may enact wage laws that are more protective than those that are provided in the act: 'No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 247–48 (2d Cir. 2011) (quoting 9 U.S.C. § 218(a) (2006)). The Second Circuit has "held that this clause demonstrates Congress' intent to allow state wage laws to co-exist with the FLSA by permitting explicitly, for example, states to mandate greater overtime benefits than the

FLSA." *Id.* at 248 (citing *Overnite Transp. Co. v. Tianti*, 926 F.2d 220, 221–22 (2d Cir. 1991)) (rejecting the argument that the FLSA preempts state wage laws)); *see also Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 464 (E.D.N.Y. 2011) ("[T]he Savings Clause in the FLSA indicates that Congress did not intend to preempt the entire field of wage law."). Thus, because Congress intended the FLSA and state wage laws to coexist, and neither express nor field preemption appear to be at issue, the Court must determine whether it is, as Defendant asserts, impossible to comply with the tip provisions in both the FLSA and NYLL.

Conflict preemption occurs "where state law actually conflicts with federal law, including where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Niagara Mohawk Power Corp.*, 673 F.3d at 95 (internal quotation marks omitted); *Figueroa*, 864 F.3d at 234 (explaining "that impossibility occurs when 'state law penalizes what federal law requires, or when state law claims directly conflict with federal law'" (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 97 (2d Cir. 2013))). The Second Circuit has cautioned "that impossibility is a 'demanding defense, and [courts] will not easily find a conflict that overcomes the presumption against preemption.'" *Figueroa*, 864 F.3d at 234 (quoting *MTBE*, 725 F.3d at 97).

"The second branch of conflict preemption—the obstacle analysis—is in play when state law is asserted to 'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *MTBE*, 725 F.3d at 101 (quoting *Arizona v. United States*, 567 U.S. 387, 406 (2012)). The Second Circuit has explained obstacle analysis as "an intermediate step down the road to impossibility preemption—[it] precludes state law that poses an 'actual conflict' with the overriding federal purpose and objective." *Id.* (quoting *Mary Jo C. v.*

7

*N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 162 (2d Cir. 2013)). "Obstacle analysis has been utilized when federal and state laws said to conflict are products of unrelated statutory regimes." *Id.*

As an initial matter, Defendant correctly observes that the FLSA (and its implementing regulations) and NYLL treat mandatory fees or service charges differently. (Dkt. No. 26-1, at 9); *compare Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70, 81 (2008) (holding that the "gratuity" provisions of NYLL § 196-d "can include mandatory charges when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees"), *with* 29 C.F.R. § 531.55(a) ("A compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to its employees cannot be counted as a tip received . . . ."). Defendant argues that this "distinction between mandatory charges and gratuities has various implications under the FLSA." (Dkt. No. 26-1, at 9).[5] The only implication Defendant identifies, however, is the FLSA's treatment of gratuities with respect to the calculation of overtime pay.[6]

---

[5] The FLSA's regulations define a tip as follows:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity. Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA. The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool. Only tips actually received by an employee as money belonging to the employee may be counted in determining whether the person is a "tipped employee" within the meaning of the Act and in applying the provisions of section 3(m) which govern wage credits for tips.

29 C.F.R. § 531.52.

[6] Defendant cites 29 C.F.R. § 531.60, which states:

> When overtime is worked by a tipped employee who is subject to the overtime pay provisions of the Act, the employee's regular rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid. . . . [A] tipped employee's regular rate of pay includes the amount of tip credit taken by the

(*Id.*). Overtime pay, however, is not at issue in this case. Defendant also cites 29 C.F.R. § 531.52, which restates the FLSA's definition of a tip, and discusses the implications of tips on tip credits.[7] Tip credits, however, are not at issue in this case, either. (*See* Dkt. No. 32, at 7 ("Plaintiffs do not assert in their [NYLL claim] that they were paid tipped employees whose hourly rate was below the statutory minimum wage.")). Thus, there appears to be no basis for concluding, at this stage in the litigation, that by complying with NYLL § 196-d, Defendants would violate the FLSA.

### 2. IRC

Two preliminary notes. First, Defendant does not argue that Congress intended the Internal Revenue Code to preempt state wage law, and has not otherwise specified whether it is arguing express, field, or conflict preemption. Given Defendant's argument that it cannot comply with both NYLL § 196-d and the IRC simultaneously, however, the Court proceeds, as did Plaintiffs, on the assumption that Defendant is arguing conflict preemption.[8] Second, the parties appear to agree that the IRC treats service charges paid to an employee, such as delivery fees, as wages to the employee and not as gratuities.[9] (Dkt. No. 32, at 10–11).

---

employer per hour (not in excess of the minimum wage . . . ) . . . . Any tips received by the employee in excess of the tip credit need not be included in the regular rate. Such tips are not payments made by the employer to the employee as remuneration for employment within the meaning of the Act.

[7] "[F]ederal tip credits . . . permit restaurant employers to pay tipped employees a lower minimum wage as long as the employees earn a certain amount in tips." *Shahriar*, 659 F.3d at 239 (citing 29 U.S.C. § 203(m)). "The FLSA permits employers to take a tip credit up to 50% of the minimum wage except that the credit 'may not exceed the value of the tips actually received by the employee.'" *Id.* at 239–40 (quoting 29 U.S.C. § 203(m)). There is no allegation in this case that the hourly rate Defendant paid Plaintiffs involved a tip credit.

[8] Defendant may also be arguing obstacle preemption. (*See* Dkt. No. 34, at 7 (arguing that the Internal Revenue Service "wants to ensure collection of its tax revenue" and that it "has framed a regulatory framework that provides that mandatory charges—such as the delivery fees at issue in this case—are not tips," and that when employers "take any applicable withholdings from wages, not tip income," there is a greater likelihood that the IRS achieves its goal of collecting tax revenue.")).

[9] Defendant bases its assertion on a July 1959 Revenue Ruling by the Internal Revenue Service, which discusses the distinction between a "tip" and a "service charge." (Dkt. No. 26-1, at 9 (citing 1959 IRB LEXIS 95, *2–3, Rev. Rul. 59-252, 1959-2 C.B. 215 (I.R.S. July 1, 1959) ("To constitute a 'tip' in the commonly accepted meaning of the term,

Defendant asserts that, if it pays a service charge to an employee as a gratuity under NYLL § 196-d, it would be prohibited by § 196-d from retaining any portion of the service charge, even for purposes of withholding taxes. Sections 3402(a)(1), (k)[10] and 3102(c)[11] of the IRC provide that an employer must deduct "tax from wages when paid" but contain separate provisions for tips and allow an employer to deduct taxes applicable to tips from wages (i.e., the lower minimum wage paid by the employer), thereby ostensibly enabling the employer to avoid "retaining a gratuity," in violation of NYLL § 196-d.[12] Defendant argues that if it pays the service charge/gratuity directly to Plaintiffs, as required by NYLL § 196-d, it would violate the

---

it is inherent in the nature thereof that certain fundamental characteristics be present. It must be presented by the customer free from compulsion; he must have the unrestricted right to determine the amount thereof; and such amount should not be the subject of negotiation or dictated by employer policy. . . . The absence of any of these factors creates a serious doubt as to whether the payment is really a tip and indicates that it is in fact a service charge for the use of certain facilities.")))

[10] Section 3402(a)(1), which governs "[i]ncome tax collected at source," states: "Except as otherwise provided in this section, every employer making payment of wages shall deduct and withhold upon such wages a tax." Subsection (k) governs "tips," and provides: "In the case of tips which constitute wages, subsection (a) shall be applicable only to such tips as are included in a written statement furnished to the employer . . . and only to the extent that the tax can be deducted and withheld by the employer." 26 U.S.C. § 3402(k).

[11] Section 3102, which governs the collection of Federal Insurance Contributions, states:

> (a) Requirement. The tax imposed by section 3101 shall be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid.
>
> . . .
>
> (c) Special rule for tips.
>
> > (1) In the case of tips which constitute wages, subsection (a) shall be applicable only to such tips as are included in a written statement furnished to the employer . . . and only to the extent that collection can be made by the employer, at or after the time such statement is so furnished . . . by deducting the amount of the tax from such wages of the employee (excluding tips, but including funds turned over by the employee to the employer pursuant to paragraph (2)) as are under control of the employer.
> >
> > (2) If the tax imposed by section 3101, with respect to tips which are included in written statements furnished in any month to the employer . . . exceeds the wages of the employee (excluding tips) from which the employer is required to collect the tax under paragraph (1), the employee may furnish to the employer . . . an amount of money equal to the amount of the excess.

26 U.S.C. § 3102(a), (c).

[12] Defendant also cites the corresponding regulation, 26 C.F.R. § 31.3102-3, which discusses the collection of taxes from employee tips.

10

IRC, which requires it to categorize services charges as wages and withhold taxes directly from those wages. [13]

Even assuming, as Defendant argues, that the IRC would require it to withhold taxes directly from the service charge paid to the employee, it is not clear that this would violate the NYLL; the NYLL specifically authorizes deductions "made in accordance with the provisions of any law." N.Y. Lab. Law § 193(1)(a); *see Hochstein v. United States*, 900 F.2d 543, 549 (2d Cir. 1990) (explaining that the "withholding of federal taxes is expressly authorized by New York's Labor Law"). Thus, while the Court cannot say that further facts, and more thorough briefing of the statutory schemes at issue, will not reveal a conflict, Defendant has not shown, at the pleading stage, that compliance with the NYLL, FLSA, and IRC are impossible.[14] *See MTBE*, 725 F.3d at 97 ("Even understood expansively, '[i]mpossibility preemption is a demanding defense,' and we will not easily find a conflict that overcomes the presumption against preemption." (quoting *Wyeth v. Levine*, 555 U.S. 555, 573 (2009)).

---

[13] Defendant also cites 26 C.F.R. § 31.3306(b)-1, a regulation governing the Federal Unemployment Tax, in support of its assertion that "mandatory charges are not tips or gratuities" under the Internal Revenue Code. (Dkt. No. 26-1, at 9). This provision states that "[t]ips or gratuities paid directly to an employee by a customer of an employer, and *not accounted for* by the employee to the employer" are "excluded from wages." 26 C.F.R. § 31.3306(b)-1(j)(3) (emphasis added). Defendant does not explain, however, how a tip or gratuity that an employee fails to report to an employer supports its assertion that "mandatory charges are not tips or gratuities." (Dkt. No. 26-1, at 9).

[14] Plaintiff relies on *Davis v. 2192 Niagara Street, LLC*, No. 15-cv-00429, 2016 WL 8969124, 2016 U.S. Dist. LEXIS 98351 (W.D.N.Y. July 26, 2016), in opposition to Defendant's preemption arguments. *Davis* is, as Defendant notes, a Report-Recommendation with pending objections. (Dkt. No. 34, at 7). In *Davis*, the court found that neither the FLSA nor the IRC preempted the plaintiff banquet servers' claim that the defendants violated NYLL § 196-d by illegally retaining gratuities—mandatory service charges imposed on banquet customers. *Davis*, 2016 WL 8969124, at *6–9, 2016 U.S. Dist. LEXIS 98351 at *20–32. The court rejected the defendants' IRC preemption argument, finding that because an employer could withhold taxes from the hourly wage, exclusive of the service charge/gratuity, and because the employee remained "responsible for paying the tax due in excess of the employee's net wages," it was "not impossible for Defendants . . . to comply with the requirements of the [IRC] and § 196-d." *Davis*, 2016 WL 8969124, at *8, 2016 U.S. Dist. LEXIS 98351, at *25. Here, Defendant's argument is slightly different—it argues that it must withhold federal taxes directly from the service charge/gratuity, not the hourly wage Plaintiffs received.

11

### B. Failure to State a Claim – NYLL § 196-d

Defendant argues that Plaintiffs do "not plausibly allege that reasonable customers believed that the delivery charge was a gratuity." (Dkt. No. 26-1, at 11). NYLL§ 196-d prohibits an employer from "demand[ing] or accept[ing], directly or indirectly, any part of the gratuities, received by an employee, or retain[ing] any part of a gratuity or of any charge purported to be a gratuity for an employee." A gratuity "can include mandatory charges when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees." *World Yacht Inc.*, 10 N.Y.3d at 81. "[T]he standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of the reasonable customer." *Id*. at 79.

Following *Samiento v. World Yacht Inc.*, the New York State Department of Labor enacted regulations concerning mandatory charges imposed by the "hospitality industry," which includes hotels and restaurants. N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-2.18, 146-3.1.[15] Section 146-2.18(b) states: "There shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for 'service' or 'food service,' is a charge purported to be a gratuity."

According to the Complaint, when customers order via the Pizza Hut website or mobile application, the amount due, including the delivery fee, is displayed, but neither platform allows a customer to add a gratuity. (Dkt. No. 1, ¶ 52). "On numerous occasions, customers have told Plaintiffs . . . they thought the delivery fee is a gratuity." (*Id*. ¶ 55). Further, Plaintiffs "infrequently received gratuities directly from customers." (*Id*. ¶ 56). Though vague, these allegations—that (i) there was a $2.50 service charge on the bill, (ii) there was no indication on

---

[15] Neither party has addressed these regulations.

12

the website prior to 2013, or on the mobile application prior to August 2015, that this was not a tip, (iii) there was no way for a customer to add a gratuity when ordering delivery of food via the website or mobile application, (iv) customers commented that they believed the charge was a gratuity, and (v) Plaintiffs received infrequent tips—allow a plausible inference that a reasonable customer would have believed that the service charge was a gratuity.[16] *World Yacht*, 10 N.Y.3d at 79; *see also Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 286 (S.D.N.Y. 2011) (denying summary judgment where there was evidence that the "defendants used the words 'gratuity,' 'service charge,' and 'tip' at various times to describe the Banquet Service Charges," the "banquet contracts contained no information indicating that the Banquet Service Charge would not be paid entirely to the service staff," and "banquet customers rarely left an additional gratuity").

### C.    Failure to State a Claim –NYLL § 198-b & FLSA § 206

Defendant seeks dismissal of the second and third causes of action, which allege that Defendant failed to reimburse Plaintiffs "the reasonably approximate amount of their automobile expenses, thereby reducing their wages below the statutory minimum wage," (Dkt. No. 1, at 16–18), in violation of the NYLL, N.Y. Lab. Law § 198-b(2), and the FLSA, 29 U.S.C. § 206(a)(1). (Dkt. No. 26-1, at 13).

During the time period applicable to this action, the federal minimum wage was $7.25 per hour. 29 U.S.C. § 206(a). The New York minimum wage was $7.15 until December 30, 2013. N.Y. Lab. Law § 652(1). Under the FLSA and NYLL, "[a]n employee cannot state a claim for a minimum wage violation 'unless [his] average hourly wage falls below the . . . minimum wage.'"

---

[16] Defendant cites *Orozco v. Fresh Direct, LLC*, No. 15-cv-8226, 2016 WL 5416510, at *4, 2016 U.S. Dist. LEXIS 133296, at *14–15 (S.D.N.Y. Sept. 27, 2016), in support of its contention that Plaintiffs failed to plausibly allege that a reasonable customer would have believed the service charge was a gratuity. *Orozco*, however, involved a grocery delivery service that was not part of the "hospitality industry" and thus not subject to New York State Department of Labor regulations. 2016 WL 5416510, at *4, 2016 U.S. Dist. LEXIS 133296, at *10–11.

13

*Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 402 (E.D.N.Y. 2015) (quoting *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013)); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 41 (E.D.N.Y. 2015) ("An employee bringing an action for unpaid minimum wages under the FLSA and the NYLL 'has the burden of proving that he performed work for which he was not properly compensated.'" (quoting *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011))). "To state an FLSA [or NYLL] minimum wage claim, it is sufficient for a plaintiff to allege facts about her salary and working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period." *Tackie v. Keff Enters.*, LLC, 14-cv-2074, 2014 WL 4626229, at *3, 2014 U.S. Dist. LEXIS 130148, at *6 (S.D.N.Y. Sept. 16, 2014)). Under the FLSA, if an employer requires an employee to provide and use a vehicle, the cost of that vehicle must not cut into the minimum wage:

> if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

29 C.F.R. § 531.35. "Vehicles . . . are considered to be 'tools of the trade,' if the particular employees, such as delivery workers, are required to own and use them during the course of their employment." *Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14-cv-7850, 2016 WL 8650464, at *7, 2016 U.S. Dist. LEXIS 155116, at *20 (S.D.N.Y. Nov. 7, 2016) (citing *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 257–58 (S.D.N.Y. 2008)), *report and recommendation adopted*, 2017 WL 1194682, 2017 U.S. Dist. LEXIS 47894 (S.D.N.Y. Mar. 30, 2017). NYLL regulations likewise provide: "If an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required

14

minimum wage." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.7(c). The applicable federal regulation states only that an employer's reimbursement must "reasonably approximate the expenses incurred." 29 C.F.R. § 778.217(a).

Here, Plaintiffs allege that, in addition to the minimum wage, Defendant paid them "$1.35 per delivery to reimburse them for their driving expenses." (Dkt. No. 1, ¶ 73). Plaintiffs assert that they "made an average of 18 deliveries per 8-hour shift, which required them to drive an average of 6 miles per round trip, totaling 108 miles per shift and 13.5 miles per hour (108 miles/8 hours)." (*Id.* ¶ 71). Plaintiffs contend they spent $2 on gas per hour. (*See id.*, ¶ 70 ("[O]n days they worked 10 hours" they spent "$20 on gas.")). Plaintiffs allege that Defendants paid them $7.25 per hour plus $3.04 per hour[17] for deliveries—or a total of $10.29 per hour. Under the Internal Revenue Service's standard mileage reimbursement rate, Plaintiffs would have received a minimum of $6.88 per hour[18] in vehicle expenses. Therefore, if the Internal Revenue Service's standard mileage reimbursement rate reasonably accounts for the expenses of operating an automobile, the rate Plaintiffs received, $3.21 per hour ($10.29 per hour - $6.88 (vehicle expenses) = $3.41), violates the FLSA and NYLL's minimum wage provisions. In reaching this conclusion, the Court makes no determination as to what a reasonable approximation of vehicle expenses may be in this case but concludes only that the IRS mileage rate may suggest a reasonable approximation. *See Perrin v. Papa John's Int'l*, *Inc.*, 114 F. Supp. 3d 707, 721 (E.D. Mo. 2015) (finding that, "at most," excerpts from a Department of Labor Handbook, "suggest that the IRS standard business mileage rate may be a reasonable approximation of employee

---

[17] On an average 8-hour shift, Plaintiffs made $24.30 (18 deliveries x $1.35 per delivery = $24.30); therefore, on average, they made $3.04 per hour ($24.30/8) for deliveries.

[18] The minimum reimbursement rate is $0.51/mile. On an average 8-hour shift, Plaintiffs would have been reimbursed $55.08 (108 miles x $0.51/mile = $55.08), which would translate into $6.88 per hour ($55.08/8) on average.

vehicle expenses. These authorities do not suggest that the IRS rate is the only reasonable approximation of such expenses"). Although Defendant argues that Plaintiffs spent $20 on gas per shift, and that the $1.35 per delivery more than covered the cost of gas, Defendant fails to account for maintenance costs. *See Canelas v. World Pizza, Inc.*, No. 14-cv-7748, 2017 WL 1233998, at *13, 2017 U.S. Dist. LEXIS 50615, at *34 (S.D.N.Y. Mar. 31, 2017) ("Any gas or maintenance costs would therefore necessarily cut into a delivery person's minimum wage."). Accordingly, Defendant's motion to dismiss the second and third causes of action are denied.

## V.    CONCLUSION

For these reasons, it is

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 26) is **DENIED.**

**IT IS SO ORDERED.**

Dated: March 27, 2018
       Syracuse, New York

*/s/ Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge